# EXHIBIT 1

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, on behalf of itself and all others similarly situated, | Case No. |
| Plaintiff, | 16 CH 9 46 |
| v. | FILED |
| B.E. Atlas Company, an Illinois corporation, | JUN 2 1 2016 |
| Defendant. | *Keith Brin*<br>CIRCUIT CLERK |

**Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations [Class Action] and for Declaratory Relief; Exhibits; Demand for Jury Trial**

Plaintiff Craftwood Lumber Company brings this action on behalf of itself and all other similarly situated parties, and alleges:

## Introduction

1.      More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was enacted into law.  The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes.  The law prohibited advertisers from transmitting facsimile advertising without obtaining prior express invitation or permission of the recipient.  In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by enacting the Junk Fax Prevention Act of 2005.  As amended, the law requires advertisers to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and the legal requirements for exercising that right.

2.      Plaintiff brings this class action to recover damages for and enjoin repeated junk faxing by Defendant B.E. Atlas Company in direct violation of the TCPA and of regulations promulgated by the Federal Communications Commission.  Within four years preceding the filing of this Complaint Defendant has sent junk faxes to Plaintiff, including, but not limited to, the facsimile transmission of advertisements to Plaintiff's telephone facsimile number on March 10, 2014, and December 18, 2014, true

and correct copies of which are attached hereto as Exhibits 1 & 2.

## Standing and Jurisdiction

3.      This Court has subject matter jurisdiction over this matter and Plaintiff

has standing to seek relief in this Court because 47 U.S.C. § 227(b)(3) authorizes

commencement of an action in an appropriate state court to obtain damages in the

minimum amount of $500 for each violation of the TCPA, to obtain injunctive relief, or

for both such actions.

## The Parties

4.      Plaintiff Craftwood Lumber Company is, and at all times relevant hereto

was, a corporation duly organized and existing under the laws of the state of Illinois, with

its principal place of business in Highland Park, Illinois.  Craftwood is, and at all times

relevant hereto was, the subscriber of the facsimile telephone number ((847) 831-2805) to

which Defendant sent junk faxes, including, but not limited to, the faxes attached as

Exhibits 1 & 2 to this Complaint.

5.      Defendant B.E. Atlas is a corporation organized and existing under the

laws of the state of Illinois and having its principal place of business in Chicago, Illinois.

At all relevant times B.E. Atlas has been a "person" within the meaning of 47 U.S.C. §§

153(39) and 227(b)(1).

### The TCPA's Prohibition of Junk Fax Advertising

6.     By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements.  This practice imposed tremendous disruption, annoyance, and cost on consumers and businesses.  Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate communications from junk faxes and to discard the latter.

7.     Congress responded to the problem by passing the TCPA in 1991.  The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'"  H.R. Rep. No. 102-317 (1991).  It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

8.     The original law did not achieve its objectives, however.  In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop.[1]

---

[1] FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

Congress responded by strengthening the law through the JFPA. This 2005 amendment for the first time required advertisers to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").[2] To comply with these requirements, the advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs recipients of their right to stop future junk faxes and of the legal requirements for making an effective opt-out request. The notice must be distinguishable from the advertising copy by use of bolding, italics and different font.

### Defendant's Illegal Junk Fax Program

9.      B.E. Atlas operates as wholesale distributor and seller of hardware, plumbing supplies, electrical supplies, hand and power tools, locks, and painting and cleaning supplies. Within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, and continuing to the present, B.E. Atlas has implemented an illegal junk fax advertising program. The purpose, design and effect of B.E. Atlas's program is the illegal transmission of fax advertisements to promote the sale of B.E. Atlas's property, goods and services. Among the many services promoted by B.E. Atlas's illegal junk faxes is

---

[2] See 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

B.E. Atlas's website, which advertises the company and its property, goods and services. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of B.E. Atlas's overall marketing and promotional activities and sale of B.E. Atlas's property, goods and services. These illegal junk faxes include, but are not limited to, Exhibits 1 & 2 to this Complaint.

10.     Craftwood is informed and believes, and upon such information and belief alleges, that B.E. Atlas transmitted the faxes that are the subject of this lawsuit without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations. Craftwood did not give B.E. Atlas prior express invitation or permission to send fax advertisements, including, but not limited to, Exhibits 1 & 2.

11.     In the course of its illegal fax advertising campaigns B.E. Atlas failed to comply with the Opt-Out Notice Requirements and separately violated the TCPA and FCC regulations. As a further result of these violations, B.E. Atlas is precluded from asserting either of the two defenses available under the TCPA: (i) "prior express invitation or permission" ("PEP") that may have been given by a recipient (§ 227(a)(5)); and (ii) a three-prong defense based on transmissions to a recipient with whom Defendant may have had an "established business relationship" ("EBR"), § 227(b)(1)(C)(i)-(iii).

12.     B.E. Atlas's violations of the TCPA and/or FCC regulations were "willful" and/or "knowing" as used in § 227(b)(3) because, among other things:

A.     B.E. Atlas fully intended its acts; the company's repeated transmission of fax advertisements was no mistake or accident.

B.     B.E. Atlas made no effort to comply with the Opt-Out Notice Requirements in connection with the faxes that are the subject of the lawsuit.

13.     Craftwood is informed and believes, and upon such information and belief alleges, that B.E. Atlas is directly liable for the violations of the TCPA and FCC regulations alleged herein because, *inter alia*, it (a) was a sender of the fax advertisements that are the subject of this lawsuit because these advertisements were sent on its behalf and/or its property, goods or services were promoted in such advertisements; (b) approved, authorized and/or participated in the formulation, preparation and sending of the fax advertisements; (c) received and retained the benefits of the fax advertisements in the form of revenue, and name/brand recognition and promotion; and (d) had actual notice of the unlawful activity constituting the violations herein and failed to take steps to prevent the same.

14.     **Private Right of Action.** Under section (b)(3) of the TCPA, Craftwood has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff Class to redress B.E. Atlas's violations of the TCPA and the FCC regulations.

## Class Action Allegations

15. **Statutory Reference**. This action is properly maintainable as a class action under authority of Code of Civil Procedure section 2-801 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative party will fairly and adequately protect the interest of the class; and (d) a class action is an appropriate method for the fair and efficient adjudication of the controversy.

16. **Class Definition**. The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that discusses, describes, or promotes the property, goods or services of B.E. Atlas, was sent via facsimile transmission within four years preceding the commencement of this action, including, without limitation, the faxes attached to the Complaint as Exhibits 1 & 2. Plaintiff reserves the right to amend the class definition after completion of class certification discovery.[3]

---

[3] Excluded from the Plaintiff Class are officers, directors, and employees of Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns of Defendant, Defendant's officers and directors, or of any affiliated company; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

17.     **Class Size**.  Craftwood is informed and believes, and upon such information and belief alleges, that the Plaintiff Class numbers in the thousands.

18.     **Typicality**.  The claims of Craftwood are typical of those held by the Plaintiff Class because, among other things, they were sent the same type of facsimile communications; they have the same claims under the TCPA and FCC regulations; and they are entitled to the same statutory damages and injunctive relief.

19.     **Adequacy of Representation**.  The Plaintiff Class will be well represented by Craftwood and its counsel.  Craftwood appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case.  Craftwood can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members.  Craftwood has successfully prosecuted other TCPA class actions. Craftwood's counsel has the necessary resources, experience and ability to prosecute this case on a class action basis.  Craftwood's counsel has extensive experience representing consumers and other clients in complex business disputes, has significant experience as class counsel in federal and state courts, and has significant experience litigating TCPA class actions.

20.     **Impracticability of Joinder**.  Joinder of all Plaintiff Class members is impracticable due to the class's size and due to the relatively small potential monetary

recovery for each  class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

21.     **Common Questions of Law and Fact Are Predominant.**  Numerous common questions of law and fact may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right to recover following the class judgment.

A.     **Common Questions of Fact**.  This case presents numerous questions of fact that are common to all class members' claims.  The case arises out of a common nucleus of fact and standardized conduct by B.E. Atlas because, among other things: (1) the same type of faxes; (2) were transmitted by the same sender, in the same manner and from the same facsimile telephone number; (3) in violation of the same statute(s) and FCC regulations in the same manner; and (4) entitling class members to receive the same statutory damages and injunctive relief.

B.     **Common Questions of Law**.  The case presents numerous common questions of law, including, but not limited to:

(1)     whether the faxes that are the subject of this lawsuit are advertisements within the ambit of the TCPA and the FCC regulations;

(2)     whether B.E. Atlas complied with the Opt-Out Notice Requirements

of the TCPA and the FCC's regulations, and the legal consequences of the failure to comply with those requirements;

(3)     what constitutes a willful or knowing violation of the TCPA within the meaning of section (b)(3) of the TCPA;

(4)     whether B.E. Atlas committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

(5)     whether damages should be increased on account of B.E. Atlas's willful and/or knowing violations and, if so, by what amount;

(6)     whether the injunctive relief sought in paragraphs 28 and 32 should issue.

22.     **Injunctive Relief Is Appropriate**.  B.E. Atlas has acted on grounds that apply generally to the Plaintiff Class, so that injunctive relief is appropriate respecting the Plaintiff Class as a whole.

23.     **Predominance and Superiority of Class Adjudication**.  The action should be maintained as a class action because questions of law and fact common to members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and

efficient adjudication of the controversy, including:

A.    Common questions of law and fact, including those identified in paragraph 21, predominate over questions, if any, affecting only individual members.

B.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for B.E. Atlas.

C.    Proof of the claims of Craftwood will also prove the claims of the Plaintiff Class without the need for separate or individualized proceedings, and the statutory damages provided for in the TCPA are the same for all members of the Plaintiff Class.

D.    B.E. Atlas has acted pursuant to common policies and practices in the same or similar manner with respect to all members of the Plaintiff Class.

24.    **Appropriate Method for Fair and Efficient Resolution of the Controversy.** A class action is an appropriate method for the fair and efficient adjudication of the controversy for several reasons:

A.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for B.E. Atlas.

B.      Because B.E. Atlas has acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole.

C.      Questions of law and fact common to members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D.      Common questions of law and fact, including those identified in paragraph 21, predominate over questions affecting only individual members.

E.      Absent class certification there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

F.      Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Individual action to remedy B.E. Atlas's violations would be grossly uneconomical. As a practical matter, the claims of the Plaintiff Class are not likely to be redressed absent class certification.

G.      Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the fees and costs of litigation among class members in relationship to the benefits

-13-

received.

25.     **Notice**.  Craftwood contemplates that notice be provided to all members of the Plaintiff Class that can be identified through reasonable effort.  The notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members.

## Count I: Violations of 47 U.S.C. § 227 and FCC Regulations

26.     **Incorporation**.  Craftwood and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 25, above.

27.     **B.E. Atlas's Violations of the Prohibition of Unsolicited Facsimile Advertising**.  Within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, and continuing to the present, B.E. Atlas violated the TCPA and FCC regulations promulgated under the Act by reason of, among other things, transmitting unsolicited advertisements from telephone facsimile machines, computers, or other devices to telephone facsimile machines using facsimile telephone numbers of Plaintiff and other members of the Plaintiff Class.

-14-

28. **Injunctive Relief.** Subsection (b)(3)(A) of the TCPA authorizes Craftwood to bring an action to enjoin a violation of the Act and/or FCC regulations. Craftwood requests that preliminary and permanent injunctions issue to: (1) prohibit B.E. Atlas, its employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with it, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting B.E. Atlas, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending to any person or entity any further unsolicited fax advertisements or fail to comply with the Opt-Out Notice Requirements; (2) require B.E. Atlas to deliver to Craftwood all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records of transmission; (3) require B.E. Atlas to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require B.E. Atlas to provide written notice to all persons and entities to whom B.E. Atlas sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by B.E. Atlas's violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require B.E. Atlas to conspicuously place on the homepage of its

-15-

website(s) the warnings contained in subparagraph (4) of this paragraph.

29.      **Damages**.  Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by B.E. Atlas of the TCPA and/or FCC regulations alleged in this Count.  In addition, Craftwood is informed and believes, and upon such information and belief alleges, that B.E. Atlas committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

### Count II: Violations of 47 U.S.C. § 227 and FCC Regulations

30.      **Incorporation**.  Craftwood and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 29, above.

31.      **B.E. Atlas's Violations of the Opt Out Notice Requirements**.  Within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, and continuing to the present, B.E. Atlas violated the TCPA and FCC regulations promulgated under the Act by reason of, among other things, transmitting advertisements that failed to comply with the Opt-Out Notice Requirements from telephone facsimile machines, computers, or other devices to telephone facsimile machines using facsimile telephone numbers of Craftwood and other members of the Plaintiff Class.

32.     **Injunctive Relief.**  Subsection (b)(3)(A) of the TCPA authorizes Craftwood to bring an action to enjoin a violation of the Act and/or FCC regulations. Craftwood and the Plaintiff Class request that the Court enter the following relief, in the form of preliminary and permanent injunctions that requires B.E. Atlas to place on the first page of all facsimile advertisements a notice that is clear, conspicuous and fully complies with the Opt-Out Notice Requirements.

33.     **Damages**.  Subsection (b)(3)(B) of the TCPA provides for the recovery of damages in the minimum amount of $500 for each violation by B.E. Atlas of the TCPA and/or FCC regulations alleged in this Count.  In addition, Plaintiff is informed and believes, and upon such information and belief alleges, that B.E. Atlas committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

## Count III: Declaratory Relief

34.     **Incorporation.**  Craftwood and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 33, above.

35.     An actual controversy has arisen and now exists between Craftwood and the Plaintiff Class, on the one hand, and B.E. Atlas, on the other hand.  Craftwood and the Plaintiff Class contend that B.E. Atlas did not obtain prior express invitation or

permission to send, within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, and continuing to the present, facsimile advertisements to subscribers of facsimile telephone numbers, including Craftwood and the Plaintiff Class. On information and belief, B.E. Atlas disputes this contention and contends that it obtained prior express invitation or permission to send such facsimile advertisements to subscribers of facsimile telephone numbers, including Craftwood and the Plaintiff Class.

36.     An actual controversy has arisen and now exists between Craftwood and the Plaintiff Class, on the one hand, and B.E. Atlas, on the other hand. Craftwood and the Plaintiff Class contend that B.E. Atlas did not include in its fax advertisements sent within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, and continuing to the present, disclosures that complied with the Opt-Out Notice Requirements. On information and belief, B.E. Atlas disputes this contention and contends that it complied with the Opt-Out Notice Requirements.

37.     Craftwood and the Plaintiff Class desire a judicial determination that:

A.     B.E. Atlas did not obtain prior express invitation or permission to send facsimile advertisements to subscribers of facsimile telephone numbers, including Craftwood and the Plaintiff Class, within four years preceding the commencement of this

action, including, without limitation, on March 10, 2014, and on December 18, 2014.

B.    B.E. Atlas did not include in its fax advertisements sent within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, an opt-out notice that complied with the Opt-Out Notice Requirements.

## Prayer for Relief

WHEREFORE, Craftwood and the Plaintiff Class pray for judgment against B.E. Atlas as follows:

**On Count I:**

1.    In accordance with subsection (b)(3)(B) of the TCPA, awarding statutory damages in the amount of $500 for each alleged violation of the TCPA and/or the FCC regulations in an amount not less than $5 million, and trebling of such statutory damages;

2.    Entering the preliminary and permanent injunctions requested in paragraph 28 of this Complaint;

**On Count II:**

3.    In accordance with subsection (b)(3)(B) of the Act, awarding statutory

damages in the amount of $500 for each violation of the Opt-Out Notice Requirements in an amount not less than $5 million, and trebling of such statutory damages;

4.      Entering the preliminary and permanent injunctions requested in paragraph 32 of this Complaint;

**On Count III:**

5.      A judicial declaration that B.E. Atlas did not obtain prior express invitation or permission, within the meaning of 47 U.S.C. § 227(a)(5), to send facsimile advertisements to subscribers of facsimile telephone numbers, including Craftwood and the Plaintiff Class, within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and December 18, 2014;

6.      A judicial declaration that B.E. Atlas did not include in its fax advertisements sent within four years preceding the commencement of this action, including, without limitation, on March 10, 2014, and on December 18, 2014, an opt-out notice that complied with the Opt-Out Notice Requirements;

**On All Counts:**

7.      Certifying the Plaintiff Class defined in paragraph 16 of this Complaint;

8.     Appointing Craftwood as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

9.     Appointing Craftwood's counsel as counsel for the Plaintiff Class;

10.     Ordering payment of Craftwood's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

11.     Ordering B.E. Atlas to provide notice to members of the Plaintiff Class proposed in paragraph 16, at its own expense, of the pendency of this action and all other notices ordered by the Court;

12.     Awarding prejudgment interest; and

13.     Awarding such other and further relief as the Court shall deem just and proper.

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

Craftwood Lumber Company, an Illinois
corporation, on behalf of itself and all
others similarly situated,

        Plaintiff,

    v.

B.E. Atlas Company, an Illinois
corporation,

        Defendant.

Case No.

16 CH 9 46

RECEIVED
LAKE COUNTY, IL

JUN 21 2016

KEITH BRIN
Clerk of the Circuit Court

**Plaintiff's Memorandum in Support of Protective Motion for Class Certification**

## I.  Introduction

This class action seeks relief from Defendant B.E. Atlas Company for blasting junk fax advertisements in direct violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, to Plaintiff Craftwood Lumber Company and other businesses and consumers.

Defendant engaged in a common course of conduct toward class members: Its junk faxes hawk Defendant's products and Defendant sent all junk faxes in the same or similar manner. All junk faxes in this case are subject to the same federal statute, the TCPA. Like the countless junk fax class actions that have been brought and certified before it, this case is well suited for class treatment.

## II.  Plaintiff's Motion Protects Against a Potential "Pick-Off" Attempt

This motion is filed concurrently with Craftwood's Complaint to protect against the now-common tactic by defendants to avoid class-wide accountability by attempting to "pick-off" the named plaintiff before a motion for class certification is filed. The Illinois Supreme Court has held that the defense pick-off tactic after filing of a motion for class certification is ineffective to moot a plaintiff's claims. *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015); *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011).[1]

Based on these precedents, Craftwood has filed this early class certification

---

[1] Earlier this year the United States Supreme Court held that an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case for purposes of Article III of the United States Constitution. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 665 (2016).

motion to place itself within this safe harbor and protect this class prosecution from any pick-off attempt by Defendant. Doubtless discovery will unearth additional facts that will bolster the compelling case for certification. Craftwood will submit additional briefing to incorporate facts and arguments developed in this discovery. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) (encouraging plaintiffs to file the motion with the complaint, then seek discovery before the motion is heard), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015).

## III. The Legal Prohibition of Junk Faxes

### A. The TCPA's Prohibition of Junk Faxes

The TCPA makes it "unlawful" for any person to send an "unsolicited advertisement" by facsimile transmission. § 227(b)(1)(C). An "advertisement" falls within the ambit of the TCPA if it is "any material advertising the commercial availability or quality of any property, goods, or services." § 227(a)(5). Facsimile advertisements are unsolicited if they are sent without the recipients' prior express permission, or sent to recipients with whom the advertiser does not have an "established business relationship." § 227(a)(5), (b)(1)(C)(i)-(iii). These are the only two statutory defenses available under the TCPA.

Congress originally passed the anti-junk fax law in 1991 in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). Despite the law, American businesses and consumers continued to be "besieged" with junk faxes. Rules &

- 2 -

Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68

Fed. Reg. 44144, 44175 (July 25, 2003). Congress responded in 2005 by amending the

TCPA through the Junk Fax Prevention Act ("JFPA"), which added important consumer

protections in the form of opt-out notice requirements.[2] To comply with these

requirements, an advertiser must include a clear and conspicuous notice at the top or

bottom on the first page of the advertisement. The notice must provide specific

disclosures to recipients (which Defendant here failed to include). A fax advertiser's

noncompliance with the opt-out notice requirements has serious consequences—it

separately constitutes a violation of the TCPA/FCC regulations. *Ira Holtzman, C.P.A. &*

*Assocs., Ltd. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).

The TCPA establishes a minimum statutory damage of $500 per transmission—

without the need to show any actual damage. § 227(b)(3). A court also may increase

statutory damages by up to three times if the defendant has violated the law either

"knowingly" or "willfully." § 227(b)(3). Moreover, the TCPA "was not designed solely

to compensate each private injury caused by unsolicited fax advertisements, but also to

address and deter the overall public harm caused by such conduct." *Texas v. American*

*Blastfax, Inc.,* 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000). Here, class treatment will

ensure that the injured class members are able to seek recovery under the TCPA and deter

---

[2] The opt-out notice requirements are contained in § 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(E), and the FCC's regulations found at 47 C.F.R. § 64.1200(a)(4)(iii)-(vi) and its 2006 order. *See* Federal Communications Commission, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006).

the public harm caused by Defendant's mass fax-blasting campaign.

**IV.    B.E. Atlas's Illegal Junk Fax Campaign**

B.E. Atlas is a national wholesale distributor of hardware, plumbing supplies, electrical supplies, hand and power tools, locks, and painting and cleaning supplies. (Affidavit of C. Darryl Cordero ("Cordero Aff.") ¶ 12.) The company stocks more than 30,000 items from more than 950 different manufacturers throughout the United States and overseas. (*Id.*) Defendant has resorted to illegal junk faxes to promote its products and services, and sells its products to various retail outlets such as cooperative hardware stores, industrial suppliers, locksmiths and lawn and garden centers. (Compl. ¶ 9; Affidavit of David W. Brunjes ("Brunjes Aff.") ¶ 6, Exs. 1 & 2.)

Craftwood Lumber Company is a Highland Park hardware store. (Brunjes Aff. ¶ 1.) B.E. Atlas sent Craftwood junk faxes explicitly promoting the sale of Defendant's products and services and encouraging recipients to place orders. (*Id.* ¶ 6.) Craftwood has no business relationship with B.E. Atlas, nor did it give B.E. Atlas permission to send any junk faxes. (*Id.*)

Based on its counsel's experience with junk faxes, Craftwood believes that the faxes received by it are the "tip of the iceberg." (Cordero Aff. ¶ 11.) Craftwood is confident discovery will reveal a fax advertising campaign of widespread dimensions.

**V.    The Proposed Plaintiff Classes**

Craftwood has moved to certify the following class:

> The Plaintiff Class consists of all persons and entities that
> were subscribers of facsimile telephone numbers to which
> material that discusses, describes, or promotes the property,

goods or services of B.E. Atlas, was sent via facsimile transmission within four years preceding the commencement of this action, including, without limitation, the faxes attached to the Complaint as Exhibits 1 & 2. (*See* Compl. ¶ 16.)

Craftwood reserves the right to amend this class definition after completion of class certification discovery.

## VI. Argument

### A. The Weight of Authority Favors Certification of Junk Fax Classes

The Seventh Circuit has observed that "[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Turza*, 728 F.3d at 684; *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 271 F.R.D. 595, 600 (N.D. Ill. 2010) ("the weight of authority" supports certification of junk fax class actions), *vacated and remanded on other grounds*, 637 F.3d 721 (7th Cir. 2011). Because section 2-801 of the Illinois Code of Civil Procedure is patterned after Rule 23 of the Federal Rules of Civil Procedure, federal decisions interpreting Rule 23 are persuasive authority on questions of class certification in Illinois. *Mashal v. City of Chicago*, 981 N.Ed.2d 951, 959 (Ill. 2012); *Schlessinger v. Olsen*, 86 Ill. 2d 314, 320 (1981). Courts in the Northern District of Illinois clearly agree with the weight of authority supporting certification of junk fax cases, and regularly and consistently certify junk fax classes.[3] Illinois state courts do so

---

[3] *E.g., Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014); *Mussat v. Global Healthcare Res.*, No. 11 C 7035, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013), and 2013 WL 626981 (N.D. Ill. Feb. 20, 2013); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, No. 09 C 3963, 2012 WL 3961307 (N.D. Ill. (footnote continued)

- 5 -

as well.[4]  And critically, the Eight Circuit recently held that denying certification of a class that meets the commonality and predominance requirements of Rule 23(a)(2) and (b)(3) is an abuse of discretion.  *See Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, Case No. 15-1317, 2016 WL 1743037, at \*5 (8th Cir. May 3, 2016).

The common thread is that fax-blasting violations are tailor-made to the class action device.  As Judge Darrah stated, "[c]lass actions were designed for these types of claims."  *G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-cv-4521, 2010 WL 744262, at \*6 (N.D. Ill. Feb. 25, 2010).

**B.    This Case Satisfies the Requirements for Class Certification**

Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, prescribes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect class interests; and (4) the class action is an appropriate method for the fair and efficient adjudication of the

---

Sept. 10, 2012); *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-CV-5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010).

[4] *E.g.*, *C.E. Design, Ltd. v. Letrix USA, Inc.*, No. 06 CH 26834, 2013 WL 5788356 (Ill. Cir. Aug. 30, 2013); *C.E. Design, Ltd. v. C&T Pizza, Inc.*, No. 06 CH 27638, 2013 WL 1783623 (Ill. Cir. Apr. 4, 2013); *Loncarevic & Assocs., Inc. v. Stanley Foam Corp.*, No. 09 CH 15403, 2013 WL 1783625 (Ill. Cir. Apr. 4, 2013); *Uesco v. Poolman*, No. 09 CH 16028, 2011 WL 10798570 (Ill. Cir. Aug. 10, 2011); *G.M. Sign, Inc. v. 400 Freight Servs., Inc.*, No. 07 CH 2727, 2010 TCPA Rep. 1934 (Ill. Cir. Jan. 7, 2010); *Brill v. Becktold Enters., Inc.*, No. 06 CH 1520, 2009 WL 9152830 (Ill. Cir. Jan. 16, 2009); *Overlord Ent., Inc. v. Wheaton-Winfield Dental Assocs., Ltd.*, No. 04 CH 1613, 2006 WL 4591049 (Ill. Cir. June 9, 2006).

controversy. The proposed Plaintiff Class easily satisfies all section 2-801 elements.

### 1.    Joinder of all members is impracticable

In assessing whether a proposed class meets the numerosity requirement, the court may "make common-sense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). Relevant factors include the number of proposed class members, their geographic dispersion, the ability of individual members to bring suit on their own, judicial economy, and the inconvenience of trying a multitude of individual lawsuits. *Id.*; *see also Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *3 (N.D. Ill. Aug. 17, 2004). A plaintiff need not show the precise number of members in the class; no magical number is necessary. *Wood River Area Dev. Corp. v. Germania Fed. Savs. & Loan Ass'n,* 198 Ill. App. 3d 445, 449-50 (5th Dist.1990).[5] Although there is no "bright-line" test for numerosity, a proposed class of at least forty members satisfies the numerosity requirement. *Id.* at 450.

The Complaint alleges that the Plaintiff Class to which B.E. Atlas sent junk fax advertisements is numerous. (Compl. ¶ 17.) "General knowledge and common-sense" support this allegation. B.E. Atlas has a national sales reach, which suggests widespread distribution to what is likely thousands of members of the Plaintiff Class. (Cordero Aff. ¶ 12, Ex. 3); *see Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *3 (N.D. Ill. May 27, 2008) (numerosity satisfied with respect to class of Illinois junk fax

---

[5] Courts have held that a TCPA plaintiff need not identify the specific fax numbers to which faxes were sent in order to have a class certified. *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008).

recipients where "common sense" suggested that out of hundreds of thousands of faxes sent nationwide, a "good number" were received by Illinois residents). Experience of Craftwood's counsel supports the same conclusion. (Cordero Aff. ¶ 11.) Joinder of all class members would not just be "impracticable," but impossible.

### 2. Common questions of fact and law predominate in this action

The second section 2-801 element is that common "questions of fact or law" predominate over individual questions. A single common question of either fact or law is enough. *Miner v. The Gillette Co.*, 87 Ill. 2d 7, 17 (1981). Generally, when all class members have been aggrieved by the same or similar misconduct, the commonality requirement is satisfied. *P.J.'s Concrete Pumping Serv. Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "Once this basic determination has been made, the fact that there may be individual questions…will not defeat the predominating common question." *Miner*, 87 Ill. 2d at 19.

B.E. Atlas's faxes appear to have been sent in the exact same manner to members of the Plaintiff Class. Where, as here, the defendant has acted in the same basic way to all members of a class, common questions predominate. *Martin v. Heinold Commodities, Inc.*, 139 Ill. App. 3d 1049, 1052 (1st Dist. 1985), *aff'd in part, rev'd in part on other grounds*, 117 Ill. 2d 67 (1987); *see also Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 445-46 (E.D. Mich. 2015) (common issues predominate because all class members' claims are brought under the TCPA and based on the same legal theories); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (mass fax broadcasts are a standardized course of conduct).

- 8 -

Additionally, the TCPA/FCC regulations provide a basis for all class claims. *See Chapman*, 2014 WL 540250, at *11("Whether the fax broadcast violated the TCPA is an issue common to the class"). Under the TCPA all members are entitled to same exact relief. Because the successful adjudication of the class representative's claim will establish the right of recovery for all other class members, common questions predominate. *Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 548 (5th Dist. 2003); *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (1st Dist. 1991).

This case also contains many common legal issues determinable on a class basis:

- Are the faxes "advertisements" under the TCPA?
- Who are the senders of the faxes?
- How did B.E. Atlas obtain the telephone numbers to which it sent its junk faxes and did that mode and method comply with the requirements of § 227 (b)(1)(C)(ii) and FCC regulations?
- Did B.E. Atlas include in its faxes "opt-out" notices that complied with the TCPA?
- Did B.E. Atlas commit "knowing" or "willful" violations of the TCPA and should damages should be increased on account of any such "knowing" or "willful" violations?
- Is the injunctive relief requested in the Complaint warranted?

These common questions of both fact and law easily satisfy section 2-801(2).

### 3.     Craftwood will fairly and adequately represent the classes

This case also satisfies the adequate representation requirement. The purpose of this requirement "is merely to insure that all class members will receive proper, efficient,

and appropriate protection of their interests in the presentation of the claim." *Purcell &*
*Wardrope Chartered v. Hertz Corp.,* 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988). The
class representative's claim need not be identical to the other class members' claims;
rather, it is enough that the representative not seek relief antagonistic to other class
members. *Id.; see also Steinberg v. Chicago Med. Sch.,* 69 Ill. 2d 320, 338 (1977).

Here, Craftwood and the proposed Plaintiff Class have the same legal claims
based on the same statutes and/or regulations and are entitled to the same relief. There is
a perfect nexus between Craftwood's claims and those of the other class members; they
share the interest of proving that B.E. Atlas violated the TCPA by sending them
unsolicited faxes.

Moreover, there are no differing interests between Craftwood and other class
members, let alone any disqualifying ones. Prosecution of this case will be overseen by
Craftwood's President, who is an experienced business person. (Brunjes Aff. ¶¶ 1-3.)
Frustrated with FCC inaction on his complaints, David Brunjes has pursued this litigation
for reasons fully consistent with the policies behind the TCPA. (*Id.* ¶¶ 4, 7.) He
understands the responsibilities of a class representative and is prepared to discharge
those responsibilities here. (*Id.* ¶¶ 8-9.) Indeed, Craftwood has successfully prosecuted
other class actions under the TCPA. (Cordero Aff. ¶ 9.)

Moreover, Craftwood's attorneys are highly experienced in class actions and have
handled numerous TCPA class actions. Lead attorney C. Darryl Cordero has successfully

prosecuted numerous junk fax cases over the past decade. (Cordero Aff. ¶¶ 4-8.)[6] He has the experience, knowledge and resources to adequately represent and protect the interests of the putative class in this case. (*Id.* ¶ 10.)

> ### 4. A class action provides the best means for fair and efficient adjudication of class members' claims

Where, as here, the first three requirements of section 2-801 have been satisfied, it is "manifest that the final requirement of the statute [also] is fulfilled." *Steinberg*, 69 Ill. 2d at 339; *see also P.J.'s Concrete Pumping Service*, 345 Ill. App. 3d at 1004; *Clark*, 343 Ill. App. 3d at 552. In assessing the fourth requirement of section 2-801, the court may also consider "whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In addition, class treatment is found appropriate when it provides the only practical means to provide redress to all class members. *Id.*

The strong weight of authority favoring certification of TCPA classes reflects a straightforward application of the policy objective behind the class action – to encourage individuals, who may otherwise lack incentive to file individual actions, to join with others to vindicate their rights. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940). The overwhelming majority of courts have certified TCPA classes precisely because they fit this paradigm. *See Overlord Enterprises*, 2006 WL 4591049, at *8 ("forcing the class

---

[6]     Lead counsel plans on filing an application for admission pro hac vice.

members to pursue their claims individually... would seriously undermine the goal of the

TCPA scheme."). As one district court recently explained:

> [I]t is apparent that allowing consumers to bring a class action
> under the TCPA is a uniquely effective way to protect a
> population already besieged by unwanted and aggressive
> solicitations from persons or companies hawking their
> products. In fact, if the goal of the TCPA is to remove a
> 'scourge' from our society, it is unlikely that 'individual suits
> would deter large commercial entities as effectively as
> aggregated class actions...[Citation omitted.]

*Jay Clogg Realty Group, Inc. v. Burger King Corp.*, 298 F.R.D. 304, 310 (D. Md. 2014).

Here, the economics of litigation make class adjudication the ***only*** practical means

to hold B.E. Atlas accountable for its violations of law. Only by aggregating their claims

can those impacted by B.E. Atlas's junk faxes effectively challenge its calculated,

widespread defiance of federal law. *See Chapman*, 2014 WL 540250, at *16 (a $500

statutory recovery gives "individual plaintiffs...a low incentive to bring a lawsuit on their

own behalf"); *Mussat*, 2013 WL 1087551, at *7 (simple economics make it unlikely

individuals will pursue TCPA actions on their own); *Trynex,* 2013 WL 66181, at *16

("the small potential recovery in individual actions...weighs in favor of class-wide

resolution").

Leaving the vast majority of class members without a remedy would also have the

undesirable effect of allowing B.E. Atlas to benefit from its illegal advertising. *Clean

Carton Co. v. Prime TV, LLC,* No. 01 AC-11582, 2004 TCPA Rep. (TCPALaw.com)

1294, slip op. at 14 (Mo. Cir. Ct. July 13, 2004) (absent a class remedy, "a marketer

could engage in widespread unsolicited fax advertising, reap the benefits of this

- 12 -

inexpensive advertising medium… and then pay a handful of small claims judgments as merely a 'cost of doing business.'").

Conversely, there is no advantage to individual control over the prosecution of claims from either a judicial or litigant viewpoint. Litigating this case on a class basis is a far more efficient use of time and resources and will lead to a uniform result:

> Class certification regarding Defendant's alleged TCPA violations would promote efficiency and uniformity by having one forum, prevent the flooding of individual cases in Illinois courts or the bringing of none as a result of increased burden to individual litigants. Certification would also prevent waste of judicial resources, and aid judicial administration.

*C.E. Design Ltd. v. Matrix LS, Inc.*, No. 05L269, 2010 TCPA Rep. (TCPALaw.com) 19174, slip op. at 9 (Ill. Cir. Apr. 16, 2010); *accord, Avio,* 2015 WL 8731983, at *10 (Because a TCPA claim is a "negative value suit," a class action enables class members to share the burden of litigating claims); *Bee, Denning, Inc. v. Capital Alliance Group,* 310 F.R.D. 614, 629-630 (S.D. Cal. 2015); *Overlord Enterprises,* 2006 WL 4591049, at *7.

Private class actions are also vital to effective enforcement of the law. The TCPA "functions as a bounty to incentivize private enforcement actions." *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC,* No. 12-22330-CIV, 2014 WL 7366255, at *3 (S.D. Fla. Dec. 24, 2014); *see also ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 515 (3d Cir. 1998) (class action remedy gives TCPA its "teeth"), *abrogated by Mims,* 132 S. Ct. 740. Further, "class relief is superior because it will educate the public about the TCPA and its junk faxing prohibition." *Clean Carton Co.,* slip op at 14.

For all of these reasons, a class action provides *the* appropriate method for the fair and efficient adjudication of the controversy.

**VII.   Conclusion**

Based on the foregoing, Craftwood respectfully requests that the Court enter and continue hearing on this protective motion following class discovery and supplemental briefing on the motion.  At the hearing Craftwood requests that the Court certify the proposed Plaintiff Class and designate Craftwood as Class Representative and its attorneys as Class Counsel.

DATED: June 21, 2016                    GUIN, STOKES & EVANS, LLC

                                        By: _____
                                                   Charles R. Watkins

Charles R. Watkins
Attorney at Law
Guin, Stokes & Evans, LLC
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
Office: (312) 878-8391
Email: charlesw@gseattorneys.com

Attorneys for Plaintiff Craftwood Lumber
Company, and for all others
similarly situated

- 14 -

# IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

## COUNTY DEPARTMENT, CHANCERY DIVISION

Craftwood Lumber Company, an Illinois
corporation, on behalf of itself and all
others similarly situated,

      Plaintiff,

    v.

B.E. Atlas Company, an Illinois
corporation,

      Defendant

Case No.

**16 CH 9 46**

**F I L E D**

JUN 2 1 2016

*Keith Brin*
CIRCUIT CLERK

## Affidavit of C. Darryl Cordero

I, C. Darryl Cordero, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

1.     I am an attorney duly licensed to practice in the state of California, and partner of the law firm Payne & Fears LLP. I intend to file an application for admission pro hac vice in this Court after the filing of Plaintiff's Complaint and Protective Motion for Class Certification. I seek to represent proposed Plaintiff/proposed class representative Craftwood Lumber Company and the putative class in this action. The facts stated in this declaration are of my own personal knowledge and, if called and sworn as a witness, I could and would competently testify with respect thereto. This declaration is submitted in support of Plaintiff's Protective Motion for Class

Certification.

2.      This affidavit addresses my background and experience handling complex litigation, including class actions for violations of the federal anti-junk fax law, my commitment to prosecute this case vigorously on behalf of the proposed class, and my firm's pre-suit research regarding B.E. Atlas Company.

## Legal Background and Experience in Junk Fax Class Actions

3.      I am attorney with 33 years' litigation experience.  After graduating from Harvard Law School in 1981 I served as law clerk to the Hon. Harry Lee Hudspeth, United States District Judge for the Western District of Texas.  After completing my clerkship I was admitted to practice in the State of California in October 1983.  I am admitted to practice before the United States Supreme Court, the United States Court of Appeals, Second Circuit, the United States Court of Appeals, Ninth Circuit, all federal district courts in the state of California, the United States District Court for the Northern District of Illinois, and the United States District Court for the Eastern District of Wisconsin.  I have been lead counsel in complex litigation in federal and state courts throughout the country and coordinating counsel for reinsurance litigation in Bermuda.

4.      I am a business litigator.  My practice concentrates on complex, high-stakes litigation, and is national in scope.  I have represented clients in litigated matters in

California, Florida, Illinois, Missouri, New Mexico, New York, New Jersey, and Wisconsin. I also have represented clients in connection with legal disputes in courts outside the United States. I have considerable experience in antitrust, RICO, health care, and complex insurance disputes of all types (insurance coverage, insurance program disputes, reinsurance, reinsurance brokerage, and managing general agent issues).

5.     For the past 25 years I have served as counsel in class action litigation over a wide range of subject matters, including self-funded liability insurance programs, Medicaid reimbursement, and consumer cases. For the past ten years I have served as co-lead counsel for several major actions for violation of the federal anti-junk fax law, the Telephone Consumer Protection Act of 1991, and the regulations promulgated under that act by the Federal Communications Commission. In the course of my work in TCPA cases for the past decade, I have read virtually every FCC publication pertaining to junk faxes and have read literally hundreds of decisions by courts throughout the country in cases involving illegal junk faxes.

6.     Among other cases, I have served as co-lead class counsel in the following matters:

a.     Between 2006 and 2009 I prosecuted an action involving nearly 100,000 class members against "Quiznos" entities and Premier Global Services. (*Gibson & Co. Ins. Brokers v. Quiznos Corp., et al.*, U.S. Dist. Ct., Cent. Dist. Cal., No. CV06-

5849 PSG.) The *Quiznos* case was settled on a class-wide, claims-made basis (while a motion for class certification was pending) through the payment of over $7.5 million by the defendants. Class members received $450 per fax, net of attorneys' fees and class notice and administration costs. The class settlement was finally approved in February 2009.

      b.    Between 2010 and 2013 I prosecuted another case involving over 600,000 transmissions of 149 junk faxes to 24,000 class members in Los Angeles Superior Court. (*Universal Health Resources v. MDC Acquisition Co., et al.*, No. BC 415244.) In February and March 2012, I negotiated a mediated settlement under which the defendants paid $7.2 million to the class. (Settlement was later approved by the Hon. John S. Wylie of the superior court's complex case unit.)

      c.    Between 2012 and 2014 I prosecuted a TCPA class case against Tomy International in the Central District of California. (*Craftwood II, Inc., dba Bay Hardware, v. Tomy International, Inc.*, No. SACV12-1710DOC(ANx), U.S. Dist. Ct., Cent. Dist. Cal.) After two years of litigation I negotiated a $10 million settlement, which was approved by Judge David O. Carter on March 3, 2015. Under the settlement, class members received $335 per junk fax after payment of attorneys' fees and all costs of notice and claim administration.

      d.    In 2014 I achieved a record $40 million class settlement in the

Interline Brands junk fax class litigation pending in the Northern District of Illinois. (*Craftwood Lumber Co. v. Interline Brands*, No 1:1-cv-04462.) On March 23, 2015, the settlement was granted final approval by the Hon. Amy J. St. Eve of the Northern District of Illinois. I believe based on my practice experience that this was the largest dollar settlement of any junk fax case in the history of the TCPA.

      e.    In 2014 I negotiated a $15 million class recovery in the PharMerica junk fax class action (*Pines Nursing Home (77) Inc. v. PharMerica Corp.*, No. 1:13-23924-CIV-MOORE/TORRES). The settlement received final approval from the Hon. K. Michael Moore, Chief Judge of the Southern District of Florida, in November 2015.

      7.    I have also prosecuted other types of class actions. In the late 1980s, I represented a group of California hospitals that challenged Medi-Cal reimbursement practices of the State Department of Health Services (*Goleta Valley Comm. Hosp., et al., v. State Dep't of Health Services*). In that case, I obtained substantial relief for the class following a favorable summary judgment ruling.

      8.    Between 1994 and 2001 I was lead court-appointed counsel for a class of over 600 California hospitals in the United States District Court for the Eastern District of California (*Loma Linda Univ. Med. Ctr., et al. v. Farmers Group, Inc., et al.*, No. CIV-94-681-WBS). The hospitals challenged Farmers Group's accountings for a California hospital self-insurance program in which, the hospitals contended, Farmers had

improperly retained program surplus from the hospitals. In September 2000, following a phase I trial and arbitration hearing, Chief Judge William B. Shubb gave final approval to a $51 million common-fund recovery I had negotiated for the hospital class.

### Craftwood Has Previously Performed as Class Representative

9.     I worked closely with David W. Brunjes on the above-referenced *Interline Brands* class case. I believe that he, on behalf of Craftwood, fully performed the obligations of the class representative in that case. No class member objected to the settlement of that case, and only a handful of class members requested exclusion. On March 23, 2015, the Hon. Amy J. St. Eve of the Northern District of Illinois entered an order awarding Craftwood an incentive award of $25,000, the full amount requested.

### Commitment to the Case

10.     Based on the above, I believe that I have the experience, knowledge and resources (including through my co-counsel) available to me to adequately represent and protect the interests of the putative class in this case. My firm, Payne & Fears LLP, is a firm of about 55 attorneys in seven offices. The firm is committed to prosecute this case diligently on behalf of the putative class, as we have in numerous other class prosecutions under the TCPA.

11.     In my experience, copies of fax advertisements received and retained by the

class representatives are often the "tip of the iceberg" in terms of the number of fax advertisements sent by defendants during the class period. Examples of this include the following cases (all referenced earlier in this declaration): In *Gibson & Co. v. Quiznos*, the named plaintiff received two transmissions of only one junk fax, but discovery revealed that the defendants sent more than 125,000 transmissions of the same junk fax to about 100,000 recipients. In *Universal Health Resources*, the named plaintiff had retained only 12 copies of fax advertisements. Through discovery, we ascertained that one or more of the defendants sent 149 advertisements during the class period in over 600,000 facsimile transmissions and that the named plaintiff had been sent over 90 fax transmissions. In the *TOMY* case, the named plaintiff had retained only one copy of a fax advertisement. Through discovery, we ascertained that 159 fax advertisements had been sent during the class period in at least 113,000 facsimile transmissions. In the *Interline Brands* case, two junk faxes were retained by Craftwood. Through discovery, we ascertained that the defendants sent more than 750,000 facsimile transmissions of over 1,500 junk fax broadcasts during the class period.

### Pre-Suit Research Regarding B.E. Atlas Company

12.    In preparing for this protective class certification motion, members of my firm performed extensive pre-suit research regarding B.E. Atlas. This research yielded information about B.E. Atlas's national reach, its products, and its distribution network. True and correct copies of the information compiled about B.E. Atlas is attached hereto

as Exhibit 3.

## This Motion Protects Against Potential Defense "Pick-Off" Attempts

13.     The purpose of Craftwood's motion is to protect against a potential pick-off attempt from B.E. Atlas in an effort to avoid class-wide accountability for its violations. The Illinois Supreme Court has held that defense pick-off attempts are ineffective to moot a plaintiff's claims if the plaintiff has filed a motion for class certification. *Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015). We have therefore filed this motion out of an abundance of caution to place Plaintiff within this safe harbor. I recognize that discovery is necessary to have a fully-developed record for an informed class certification decision, and for that reason ask the Court to continue hearing and further briefing on the motion following a period of discovery.

I hereby declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct. Executed June *20*, 2016, at Manhattan Beach, California.

_____

C. Darryl Cordero

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document

State of California      )

County of Los Angeles    )

Subscribed and sworn to (or affirmed) before me on this __20__ day of June 2016 by

__C. Darryl Cordero_____, proved to me on the

basis of satisfactory evidence to be the person  who appeared before me.

ALLISON NIEWENHUIS
COMM. #1892679
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires 06/21/2016

_____
Signature of Notary Public

4837-7871-6464.1

-9-

# EXHIBIT 3

CORP/LLC - File Detail Report



WWW.CYBERDRIVEILLINOIS.COM

JESSE WHITE
SECRETARY OF STATE

## CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | B. E. ATLAS COMPANY | File Number | 42925985 |
| Status | ACTIVE | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 03/22/1963 | State | ILLINOIS |
| Agent Name | MICHAEL A HABER | Agent Change Date | 01/11/2007 |
| Agent Street Address | 134 NORTH LA SALLE ST STE 2100 | President Name & Address | JEFFREY G KOVARSKY 4302 N KILPATRICK CHICAGO 60641 |
| Agent City | CHICAGO | Secretary Name & Address | STEVE BURTON SAME |
| Agent Zip | 60602 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 03/01/2016 | For Year | 2016 |
| Assumed Name | INACTIVE - ATLAS SOUTH INACTIVE - NATIONAL CATALOG HOUSE FOR THE DEAF | | |

Return to the Search Screen

Select Certificate of Good Standing for Purchase

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# BBB Business Review

**THIS BUSINESS IS NOT BBB ACCREDITED.**

## B E Atlas Co., Inc

Phone: (773) 283-2550

*View Additional Phone Numbers*

4300 N Kilpatrick Ave., Chicago, IL 60641

jgkovarsky@aol.com

http://www.beatlas.com

 **On a scale of A+ to F**
Reason for Rating
BBB Ratings System Overview

*BBB Business Reviews may not be reproduced for sales or promotional purposes.*

---

### View Business Review Inquiries

B E Atlas Co., Inc has had their Business Review viewed 1 time(s) over the last 40 days. Click to view where these inquiries originated.

---

## BBB Accreditation

This business is not BBB accredited.

Businesses are under no obligation to seek BBB accreditation, and some businesses are not accredited because they have not sought BBB accreditation.

To be accredited by BBB, a business must apply for accreditation and BBB must determine that the business meets BBB accreditation standards, which include a commitment to make a good faith effort to resolve any consumer complaints. BBB Accredited Businesses must pay a fee for accreditation review/monitoring and for support of BBB services to the public.

## Reason for Rating

BBB rating is based on 13 factors. Get the details about the factors considered.

Factors that *raised* the rating for B E Atlas Co., Inc include:

Length of time business has been operating

No complaints filed with BBB

## Customer Complaints Summary

0 complaints closed with BBB in last 3 years | 0 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising/Sales Issues | 0 |
| Billing/Collection Issues | 0 |
| Delivery Issues | 0 |
| Guarantee/Warranty Issues | 0 |
| Problems with Product/Service | 0 |
| Total Closed Complaints | 0 |

Definitions | BBB Complaint Process | File a Complaint against B E Atlas Co., Inc

## Customer Reviews Summary                    Read customer reviews

0 Customer Reviews on B E Atlas Co., Inc

| Customer Experience | Total Customer Reviews |
|---|---|
| Positive Experience | 0 |
| Neutral Experience | 0 |
| Negative Experience | 0 |
| Total Customer Reviews | 0 |

Read Customer Reviews | Submit a Customer Review | See Trends in Customer Reviews on B E Atlas Co., Inc

## Government Actions

BBB knows of no government actions involving the marketplace conduct of B E Atlas Co., Inc.

What government actions does BBB report on?

## Advertising Review

BBB has nothing to report concerning B E Atlas Co., Inc's advertising at this time.

What is BBB Advertising Review?

## Additional Information

BBB file opened: August 30, 2005

Business started: 01/01/1994

Business started locally: 01/01/1994

Business incorporated 03/22/1963 in IL

**Type of Entity**

Corporation

**Business Management**

Mr. Jeffery Kovarsky, President

Steven Burton, Secretary

**Contact Information**

Principal: Mr. Jeffery Kovarsky, President

**Business Category**

Hardware - Wholesale & Manufacturers

Hardware Manufacturing (NAICS: 332510)

**Products & Services**

This company states it it is a hardware supplier to retail outlets, not
the end user consumer, but retailers.



Directions | Enlarge

## QUICK LINKS

What is a BBB Business Review?

BBB Reporting Policy

About Enhanced Services

File a Complaint against B E Atlas Co., Inc

Suggest This Business For Accreditation

Accredited Business Directory

## CUSTOMER REVIEWS

Read Customer Reviews

Submit a Customer Review

See trends in Customer Reviews for B E Atlas
Co., Inc

# B E Atlas CO (/c/mmqr4cz/b-e-atlas-co)

4300 North Kilpatrick Avenue
Chicago, IL 60641
Web: Beatlas.com (/api/v1/urlverify/http%3A%2F%2FBeatlas.com)
Ads (https://www.google.com/url?
ct=abg&q=https://www.google.com/adsense/support/bin/request.py%3Fcontact%3Dabg_afc%26url%3Dhttp://www.manta.com/c/mmqr4cz/b-
e-atlas-co%26gl%3DUS%26hl%3Den%26client%3Dca-manta-main_js%26ai0%3DCVxUhHk4iV5KHMYLqBfbwnJgLvcm-
4gfV1Nie6gKz9fP9CBABILX3IBtgyebjhsijkBmgAYPvm8IDyAEBqAMBqgSFAU_QEe-
EIOsXJbfws_DeBCp39AJ775OwYj_RFAtkEJhZ3ByHfsysAHFOxqbim9rPUFOxZqbrUEc8Lwjp_tvNQ2b-
gpolshtt4YLBFjq18W1ucKg_UrR44IKhnYwPgmCieCfxkoeutTOEoIDd0Z3P9Oup99xTioeTVa4r7H5uT2877f01CZeAB-WQ5D2oB6a-
G9gHAQ&usg=AFQjCNEwsBnhyJtFapsPODPVAeJh_-7GSA)

<u>**Supply Chain Management (https://googleads.g.doubleclick.net/aclk?sa=l&ai=CVxUhHk4iV5KHMYLqBfbwnJgLvcm-
4gfV1Nie6gKz9fP9CBABILX3IBtgyebjhsijkBmgAYPvm8IDyAEBqAMBqgSFAU_QEe-
EIOsXJbfws_DeBCp39AJ775OwYj_RFAtkEJhZ3ByHfsysAHFOxqbim9rPUFOxZqbrUEc8Lwjp_tvNQ2b-
gpolshtt4YLBFjq18W1ucKg_UrR44IKhnYwPgmCieCfxkoeutTOEoIDd0Z3P9Oup99xTioeTVa4r7H5uT2877f01CZeAB-WQ5D2oB6a-
G9gHAQ&num=1&sig=AOD64_0wTRV0J33emzNbpw3cIdENOYIXjw&client=ca-manta-
main_js&adurl=http://info.blueridgeglobal.com/whitepaper/gartner-2016-magic-quadrant-report-for-supply-chain-planning-system-
of-record/%3Futm_source%3Dgoogle%26utm_medium%3Dcpc%26utm_term%3D%26utm_campaign%3DNJM_DisTopics)**</u> Learn
who Gartner ranks as a leader Download full report - Free!

www.blueridgeglobal.com (https://googleads.g.doubleclick.net/aclk?sa=l&ai=CVxUhHk4iV5KHMYLqBfbwnJgLvcm-
4gfV1Nie6gKz9fP9CBABILX3IBtgyebjhsijkBmgAYPvm8IDyAEBqAMBqgSFAU_QEe-
EIOsXJbfws_DeBCp39AJ775OwYj_RFAtkEJhZ3ByHfsysAHFOxqbim9rPUFOxZqbrUEc8Lwjp_tvNQ2b-
gpolshtt4YLBFjq18W1ucKg_UrR44IKhnYwPgmCieCfxkoeutTOEoIDd0Z3P9Oup99xTioeTVa4r7H5uT2877f01CZeAB-WQ5D2oB6a-
G9gHAQ&num=1&sig=AOD64_0wTRV0J33emzNbpw3cIdENOYIXjw&client=ca-manta-
main_js&adurl=http://info.blueridgeglobal.com/whitepaper/gartner-2016-magic-quadrant-report-for-supply-chain-planning-system-of-
record/%3Futm_source%3Dgoogle%26utm_medium%3Dcpc%26utm_term%3D%26utm_campaign%3DNJM_DisTopics)

📞 (773) 283-2550 (tel:7732832550)

🗺 Map (/cmap/mmqr4cz/b-e-atlas-co)            Own This Business?

B E Atlas CO
A privately held company in Chicago, IL. *Is this your business? Claim This Profile*

**More Details for B E Atlas CO**
Categorized under Hardware Manufacturers. Current estimates show this company has an annual revenue of $10 to 20 million and
employs a staff of approximately 20 to 49.

**Company Contacts**
*Is this your business? Claim This Profile*

 Jeffery Kovarsky, President (/cs/mmqr4cz/b-e-atlas-co?
q=b+e+atlas+co+Chicago+Illinois&cx=000513454314247386359%3Aarvxicegnim&cof=FORID%3A10&type=
President

Search for more contacts (/cs/mmqr4cz/b-e-atlas-co?
q=b+e+atlas+co+Chicago+Illinois&cx=000513454314247386359%3Aarvxicegnim&cof=FORID%3A10&type=contacts)

4/28/2016                                          B E Atlas CO Chicago IL, 60641 – Manta.com

# Business Information

| | |
|---|---|
| **Location Type** | Unknown |
| **Annual Revenue Estimate** | $10 to 20 million |
| **Employees** | 20 to 49 |
| **SIC Code** | 3429, Hardware, NEC |
| **NAICS Code** | 33251015, Hardware Manufacturing |
| **Business Categories** | Hardware Manufacturers in Chicago, IL (/mb_55_B81AD000_4C6/hardware_nec/chicago_il) Hardware Manufacturing |
| **Business Phone** | |

## More Businesses Like This

Smith & Smith Sales Inc (/c/mbgqtpr/smith-smith-sales-inc)
Hardware Manufacturers in Chicago, IL

Bull Dog Lock CO (/c/mmcxpmy/bull-dog-lock-co)
Hardware Manufacturers in Chicago, IL

Lovatt & Radcliffe Ltd (/c/mm7bl88/lovatt-radcliffe-ltd)
Hardware Manufacturers in Chicago, IL

Amyriad Manufacturing (/c/mm24vqm/amyriad-manufacturing)
Hardware Manufacturers in Chicago, IL

Superior Fastner Corp (/c/mmqkv49/superior-fastner-corp)
Hardware Manufacturers in Chicago, IL

## Browse By City

| | |
|---|---|
| Glenview, IL<br>Hardware Manufacturers (/mb_55_B81AD000_4J7/hardware_manufacturers/glenview_il) | 1 |
| Naperville, IL<br>Hardware Manufacturers (/mb_55_B81AD000_4T7/hardware_manufacturers/naperville_il) | 1 |
| Countryside, IL<br>Hardware Manufacturers (/mb_55_B81AD000_O95/hardware_manufacturers/countryside_il) | 1 |
| Franklin Park, IL<br>Hardware Manufacturers (/mb_55_B81AD000_4I6/hardware_manufacturers/franklin_park_il) | 1 |
| Elmhurst, IL<br>Hardware Manufacturers (/mb_55_B81AD000_4GI/hardware_manufacturers/elmhurst_il) | 1 |

## Browse By Categories

| | |
|---|---|
| Hardware Manufacturers<br>in Chicago, IL (/mb_55_B81AD000_4C6/hardware_nec/chicago_il) | 11 |
| Cabinet Hardware<br>in Chicago, IL (/mb_55_B81AD02U_4C6/cabinet_hardware/chicago_il) | 2 |
| Clamps Manufacturers<br>in Chicago, IL (/mb_55_B81AD0DY_4C6/clamps_metal/chicago_il) | 2 |
| Lock Manufacturers Except Safe Vault Coin<br>in Chicago, IL (/mb_55_B81AD05N_4C6/locks_or_lock_sets/chicago_il) | 2 |
| Door Closers and Checks Manufacturers<br>in Chicago, IL (/mb_55_B81AD83O_4C6/door_closers_and_checks_manufacturers/chicago_il) | 1 |

## The place for small business.

## ✿ Grow (/resources/)

With the latest News & Advice from Manta, you can stay ahead of the trends and challenges affecting your industry and help your small business succeed. Read the latest articles! (/resources/)

## ♀ Learn (/resources/small-business-academy)

Manta's Academy helps you learn at your own speed, with in-depth educational resources covering Marketing, Finance, Management, Sales and more. View free courses! (/resources/small-business-academy/)

## 📢 Promote (/resources/tools)

Find out how to best utilize the Manta Directory by adding or claiming your company's listing, and what tools are available to help promote your business. Take a look! (/resources/tools)

## IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Craftwood Lumber Company, an Illinois
corporation, on behalf of itself and all
others similarly situated,

        Plaintiff,

    v.

B.E. Atlas Company, an Illinois
corporation,

        Defendant.

Case No.     16 CH 946

**FILED**

JUN 21 2016

*Keith Brin*
CIRCUIT CLERK

### Affidavit of David W. Brunjes

I, David W. Brunjes, being first duly sworn and under oath, state the following to
be true of my own personal knowledge, information and belief:

1.    I am President of Craftwood Lumber Company ("Craftwood"), the named
plaintiff in this action. Craftwood, an Illinois corporation, does business under the name
"Craftwood Lumber & Hardware" from its Highland Park store. Craftwood is one of the
larger hardware stores in Illinois, and serves primarily the North Shore area. I, together
with my wife, operate Craftwood.

2.    I attended the University of Illinois, School of Business Administration,
and majored in accountancy. I received my bachelor of arts degree from that institution

in 1976. In 1976, I was certified as public accountant in Illinois. I retain my membership as a certified public accountant, but I currently do not practice public accounting.

3.     From 1976 to 1979, I worked in the audit department of Coopers & Lybrand. From 1979 to 1988, I worked for Mark Controls Corporation, a publicly listed company, and several of its units, starting as Corporate Audit Department Manager and concluding my employment as Director of Sales & Marketing (FlowSeal, a unit of Mark Control Corporation). From 1988 to the present, I have worked at Craftwood.

4.     I caused Craftwood to bring this lawsuit and request appointment as a class representative because of our desire to stop, as much as possible, junk faxes and to obtain monetary and other relief for the class. I believe junk faxes are a vexing problem for businesses and consumers. Junk faxes disrupt our business operations, require someone to go through them to dispense with them, and force us to consume paper and toner against our wishes.

5.     For many years Craftwood has been the subscriber of the telephone number (847) 831-2805. Throughout this time, that telephone number has been connected to a fax machine located in our office. On a regular basis we receive, at this fax machine, unsolicited faxes of an advertising nature from persons and companies with whom we do not do business.

-2-

6.     On March 10, 2014, and December 18, 2014, Craftwood received faxes from B.E. Atlas via facsimile transmission, true and correct copies of which are attached hereto as Exhibits 1 and 2 (these exhibit numbers match the numbering of the exhibits to the Complaint). These faxes were sent to Craftwood's facsimile telephone number (847) 831-2805. To the best of my knowledge, information and belief, after making reasonable inquiry, Craftwood has had no business relationship with B.E. Atlas, and did not give B.E. Atlas prior express permission to send Craftwood, by facsimile transmission, any advertisements.

7.     I have responsibility for dealing with junk faxes received by Craftwood. I have filed more than 280 complaints with the Federal Communications Commission ("FCC") regarding junk faxes sent to Craftwood. To my knowledge the FCC has not taken any action in connection with any of Craftwood's complaints. My experience has convinced me that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws.

8.     I recognize Craftwood's responsibilities as a class representative to fairly and adequately protect the interests of the class members in the case. I am prepared to discharge those responsibilities in the interest of the proposed class. I am committed to keeping abreast of developments in the case and to exercise my independent judgment in order to discharge Craftwood's duties as class representative. Craftwood also will not place its interests ahead of the interests of the class members. I know of no antagonistic

or conflicting interests between Craftwood and class members.

9.      Neither Craftwood nor I have been provided any financial consideration to prosecute this case, nor have we been promised any such consideration. I understand that if there is a successful class recovery Craftwood, as class representative, may request an incentive award, but that any incentive award is entirely discretionary with the court. I understand and accept that, aside from any incentive award and any recovery shared with members of the class, Craftwood cannot receive any additional award, monies, or other benefits in connection with, or arising out of, the case. I also understand that if there is a successful class recovery, Craftwood's attorneys will ask the Court for payment of their fees and costs incurred in rendering services to Craftwood and the class.

_____
                          David Brunjes

I, the undersigned, a Notary Public in and for the State of Illinois, hereby certify that David Brunjes, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this the 10th day of June 2016.

_____
        Notary Public

                                              My commission expires:

```
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
        "OFFICIAL SEAL"
        DEBORAH A EVANS
     Notary Public, State of Illinois
  My Commission Expires 3/26/2018
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

-4-

# EXHIBIT 1

03-10-2014 14:36    773-286-7820    B.E. Atlas Company    D 1/1

# March No Ten

## GOING ON NOW

### March 11th, 12th and 13th



**B.E. Atlas Company**

*Wholesale Hardware*

4300 N Kilpatrick Ave.
Chicago IL, 60641
ph: 773.283.2550
fax: 773.286.7820

Come for the great deals and the free food

MARCH NO TEN

# EXHIBIT 2



B.E. Atlas
Birthday
NO 10%



**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, CHANCERY DIVISION**

JUN 21 2016

CIRCUIT CLERK

Craftwood Lumber Company, an Illinois
corporation, on behalf of itself and all
others similarly situated,

        Plaintiff,

    v.

B.E. Atlas Company, an Illinois
corporation,

        Defendant.

Case No.

**16 CH 9 46**

---

**Notice of Hearing on Plaintiff's Protective Motion for Class Certification**

To Defendant B.E. Atlas Company, and its attorneys of record:

PLEASE TAKE NOTICE that on August 26, 2016, commencing at 9 AM, the protective motion by Plaintiff Craftwood Lumber Company for class certification described below shall be presented for hearing before the Hon. Berrones in courtroom C-302 of this Court, situated at 18 N. County Street, Waukegan, IL 60085.

**Plaintiff's Protective Motion for Class Certification [735 ILCS 5/2-801]**

1.    Plaintiff Craftwood Lumber Company ("Craftwood") hereby moves this Court, under authority of 735 ILCS 5/2-801, for an order certifying the following Plaintiff Class:

1

> The Plaintiff Class consists of all persons and entities that
> were subscribers of facsimile telephone numbers to which
> material that discusses, describes, or promotes the property,
> goods or services of B.E. Atlas, was sent via facsimile
> transmission within four years preceding the commencement
> of this action, including, without limitation, the faxes attached
> to the Complaint as Exhibits 1 & 2. (*See* Compl. ¶ 16.)

2.    This case is appropriate for class treatment for the following reasons:

    (a)    The proposed Class consists of thousands of Class members with claims too small to warrant individual actions. The Class is therefore so numerous that joinder of all members is impracticable.

    (b)    There are questions of law and fact common to all Class members, and those common questions predominate over individual questions, if any.

    (c)    Craftwood and its attorneys will provide fair and adequate representation to the Class.

    (d)    A class action is an appropriate method to resolve this dispute and provides the best means for the fair and efficient adjudication of Class member claims.

3.    Craftwood has filed this motion at the outset of the case to invoke the protection afforded under Illinois law against an attempt by B.E. Atlas to pick off Craftwood as class representative and thereby avoid class-wide accountability for its

2

illegal fax-blasting operations. *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015); *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011). Craftwood respectfully requests that the Court continue hearing on the motion following a period of discovery directed to class certification issues, then permit amended briefing on class certification based on the additional facts and arguments developed in discovery.

4.    In support of this motion, Craftwood is concurrently filing its Memorandum in Support of Protective Motion for Class Certification and the Affidavits of David W. Brunjes and C. Darryl Cordero.

WHEREFORE, Craftwood prays that the Court enter and continue the motion to permit discovery on class certification issues, then certify the Class as proposed above and designate Craftwood as Class Representative and its attorneys as Class Counsel.

DATED: June 21, 2016          GUIN, STOKES & EVANS, LLC

By: _____
                                   Charles R. Watkins

Charles R. Watkins
Attorney at Law
Guin, Stokes & Evans, LLC
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
Office: (312) 878-8391
Email: charlesw@gseattorneys.com

Attorneys for Plaintiff Craftwood Lumber
Company, and for all others
similarly situated